# 23-7557

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**OTIS A. DANIEL**

Plaintiff-Appellant

Vs.

**T&M PROTECTION RESOURSES, LLC**

Defendant-Appellee

&

**EDWARD J. MINSKOFF EQUITIES, INC**

**UNIVERSAL PROTECTION SERVICE, INC**

Defendants

On Appeal from the United States District Court for
The Southern District of New York
Hon. Judge Paul A. Engelmayer

Petition for rehearing and rehearing en banc

Otis A. Daniel
P.O. Box 1231
New York, NY 10150
Tel: (917) 405-5996

# **TABLE OF CONTENT**

**OPENNING STATEMENTS.** …………………….……….pg 01

**FOR THE FOLLOWING REASONS THE
COURT SHOULD GRANT THE PETITION** …………..……...pg. 02

    **A.** REASONS WHY THE 05/09/12 CONFRONTATION
    BY ITSELF IS ENOUGH TO PROOF THAT I WAS
    SUBJECTED TO A HOSTILE WORK ENVIRONMENT …….......pg. 05

    **B.** THE SIX ALLEGATIONS THE DISTRICT COURT
    CREDITED ALONG WITH THE 05/09/12
    CONFRONTATION IS ENOUGH TO PROOF THAT
    I WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT…..pg. 08

    **C.** THE WRITTEN ALLEGATIONS IN MY EEOC/NYSDHR
    COMPLAINT FORMS ALONG WITH THE 05/09/12
    CONFRONTATION IS ENOUGH TO PROOF
    THAT I WAS SUBJECTED TO A HOSTILE WORK
    ENVIRONMENT OR AN ADVERSE EMPLOYMENT
    ACTION……………………………………………….……..pg. 09

**CONCLUSION** …………………….……..……………………pg. 14

**CERTIFICATE OF COMPLIANCE** ………………..….……pg. 15

**CERTIFICATE OF SERVICE** ……………………….……..pg. 16

## **OPENNING STATEMENTS**

**(01).** My name is Otis Daniel and I'm the pro se appellant in this matter. On 06/25/24, this court issued a summary order affirming the district court's 10/20/23 denial order. I respectfully submit to the court this petition for rehearing and rehearing en banc. **SEE**: 13 Civ. 4384 Dkt#231, **SEE**: 2nd Cir. case No. 2307557 Dkt#29

**(02).** I believe there are sufficient documentary evidences on the district court record although devoid of key actionable words such as nigger, penis or gorilla, nonetheless does proof that I was subjected to a hostile work environment. **SEE**: 13 Civ. 4384 Dkt# 1-233

**(03).** I believe there are sufficient documentary evidences on the district court record that proof that I was subjected to an adverse employment action. **SEE**: 13 Civ. 4384 Dkt# 1-233

**(04).** Before my employment termination and before filing this lawsuit, T&M/EJME senior managerial employees Mr. Steven Gutstein, Ms. Toni Scarito, Mr. John Aleles, Mr. Carl Capponi, Mr. Robert Woods, Mr. Robert Tucker, Mr. Joseph Greisch, and Mr. Jeffrey Sussman were fully aware of my claims of a hostile work environment or an adverse employment action.

1

# **FOR THE FOLLOWING REASONS THE COURT SHOULD GRANT THE PETITIION**

**(05).** On 10/12/23, I filed a Rule 60(d)(3) motion in the district court. The court in its 10/20/23 denial order states: *"thus, Mr. Daniel's motion is necessarily timely."* On 10/24/23, I timely appealed the denial order. **_SEE_**: 13 Civ. 4384 Dkt# 230, 231, 233

**(06).** In my present and previous appellate briefs, it was never my intention to forfeit or abandon appellate review. **_SEE_**: 2nd Cir. case No. 23-7557, 22-1614, 20-2283, 18-2351, 15-560

**(07).** The factual statements and/or allegations in my present and previous appellate briefs are not conclusory. Those statements and/or allegations are supported by evidentiary documents on the district court's public docket. **_SEE_**: 13 Civ. 4384 Dkt# 1-233

**(08).** The factual statements and/or allegations in my present and previous appellate briefs were based on my direct personal observations, experiences and in-depth knowledge of all documents submitted to the district court. **_SEE_**: 13 Civ. 4384 Dkt# 1-233, **_SEE_**: 2nd Cir. case No. 23-7557, 22-1614, 20-2283, 18-2351, 15-560.

**(09).** I ask this court to retain jurisdiction because before and after trial, I have exhausted all motions for equitable relief in the district court. **_SEE_**: 13 Civ. 4384 Dkt#1-233

**(10).** I ask this court to retain jurisdiction because before trial, the district court's assessment of my hostile work environment claim was based on speculations, willfully false and misleading statements from T&M. **_SEE_**: 13 Civ. 4384 Dkt#65, 67, 68, 69, 70, 71, 106

**(11).** I ask this court to retain jurisdiction because after trial, the district court's assessment of my hostile work environment claim was based on credibility, believability, demeanor, willfully false and misleading statements from T&M witnesses. ***SEE***: 13 Civ. 4384 Dkt#149, 150, 175, 185

**(12).** I ask this court to retain jurisdiction because the district court in its assessment of my hostile work environment claim excluded or overlooked relevant material facts from my timely filed RULE 59(e) motions. **FOR EXAMPLE:** ***SEE***: 13 Civ. 4384 Dkt# 111, 113, 114, 193, 195

### IN MY 07/25/18 RULE 59(e) MOTION I FACTUALLY STATED

- "I believe that I have been prejudice in this case due to legal actions that were done that I as a pro se litigant and a non-attorney do not fully understand or comprehend."

- For 16 months while I was employed by T&M at its client EJME property at 590 Madison Ave., I violated no laws or policies of theirs, of New York City or New York State.

- T&M in their decision to terminate my employment acted with discriminatory intent and with MALICE. I believe my evidences on the court record and at trial proofs this.

- T&M in its responses to the DHR/EEOC and to this court in an attempt to prove they fired me for "non-discriminatory" reasons have falsely claimed that I violated a policy of theirs that prohibits the delivery and receipt of packages or mails at the jobsite.

- I could not have violated this policy because NO SUCH POLICY existed during my tenure. As I have factually alleged in my 2nd Amended Complaint, T&M stated reasons for terminating my employment is "PRETEXTUAL." I believe my evidences on the court record and at trial proves this.

3

- I have factually alleged in my 2nd Amended Complaint, on Tues. 05/15/12, during T&M's disciplinary hearing when I attempted to complain about Mr. Melidones harassment of me by first uttering the words, "*in July 2011, he asked me if I was gay,*" I was instantly cutoff, criticized and dismissed.

- On Fri. 05/18/12, after my employment termination, in a state of mental anguish and out of desperation, I fervently sent a litany of emails to various T&M/EJME executives/Chairman/CEO and to some people I had never met or knew complaining about the same reoccurring themes: **(a).** the non-existent policy prohibiting package deliveries at the jobsite, **(b).** the BB gun and its supposed illegality, **(c).** T&M's executive actions during the disciplinary hearing, **(d)**. Mr. Melidones harassment, **(e).** the blatant fabrication of claims and/or accusations made about me starting with John Melidones.

- At trial, for the first time in this litigation, Mr. John Melidones falsely claimed that on Mon. 05/07/12, when he worked my 4pm x12am shift at 590 Mad., a USPS postal worker approached him in the lobby and asked him to accept packages on my behalf.

- At trial, for the first time in this litigation, Mr. John Melidones and T&M now falsely claimed that I was having several packages delivered to me on a weekly basis and I had a secret arrangement with the USPS postal worker to deliver these packages to me directly in the lobby in order to elude detection because of the "NO MAIL/PACKAGE DELIVERY POLICY" at the jobsite.

- At trial, for the first time in this litigation, Mr. John Melidones falsely claimed that the reason he gave to me the disciplinary write-up on 05/09/12 at the loading dock was because he was alarmed (felt threatened) by the content of my text and the time it was sent.

4

- The only evidences T&M and EJME shared with me during discovery are: **(1).** my employment application or record, **(2).** T&M/EJME employment liability agreement, **(3).** T&M's response to the NYS Division of Human Rights, and **(4).** a DVD recording that shows Mr. Melidones removing my personal effects from my locker.

### A. REASONS WHY THE 05/09/12 CONFRONTATION BY ITSELF IS ENOUGH TO PROOF THAT I WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT

**(13).** The 05/09/12 loading dock confrontation by itself should be enough to proof that I was subjected to a hostile work environment because: ***SEE***: Trial Ex. PX4

   a. Mr. Melidones waited around for an hour to physically confront me in a very public area (the loading dock).

   b. Mr. Melidones very public confrontation was done to inflict maximum humiliation. We were seen by strangers walking by, other building staff such as janitors, building engineers and three of my co-workers (subordinates).

   c. Mr. Melidones confrontation was in retaliation of me informing him via text of my intent to report his intimidating, threatening, and unprofessional behavior to T&M.

   d. Mr. Melidones confrontation was yet another instance of his intimidating, threatening, and harassing behavior that was covertly recorded.

   e. Mr. Melidones reasons for confronting me was unwarranted and factually baseless.

5

**(14)**. During the 05/09/12 loading dock confrontation John Melidones own words proof that his action was harassing and retaliatory. <u>**FOR EXAMPLE:**</u>

### <u>DURING THE 05/09/12 CONFRONTATION<br>JOHN MELIDONES CAN BE HEARD SAYING</u>

- "And just so there is no <u>ambiguity</u>, you do know what ambiguity means don't you? ***do not insult my intelligence.***

- "Also, never text me again at 12:40 at night with nonsense especially threats. NEVER! NEVER! EVER AGAIN WITH THREATS!"

- "Here is Mr. Wood's email, phone number and contact information so you can tell him about the allegations you have made against me. Feel free to contact him."

- "You said I was unwarranted, vendetta and that I was harassing you"

- "This is not a discussion. This is a dictatorship. ***Why are you attacking me? A dictatorship?*** That's right. This is a dictatorship and I'm the ruler. I run the show."

- "Otis, one thing you have to remember about me, I have been in this game a long time. I'm very professional. I won't say anything unless I have all my T's cross and I's dotted."

6

**(15)**. John Melidones written and verbal accusations about me during the 05/09/12 confrontation was based on hearsay statements from my co-workers and further made-up statements by him. **FOR EXAMPLE:**

### DURING THE 05/09/12 CONFRONTATION JOHN MELIDONES CAN BE HEARD KNOWINGLY FALSELY SAYING

- "Otis, please come on camera" **[there was no operable CCTV cameras in the area]**

- "This is on camera. It was sent over to T&M for investigation" **[Mr. Melidones had no video/ CCTV recording of me either with the BB gun or packages. Nothing was sent over to T&M]**

- "Your co-workers are the ones who identify you as being late over two dozen times" **[ this is a made-up statement]**

- "Your co-workers are the ones who said you called her a dirty rat because of the way she look and made allegations about some impropriety about ethnicity…about four or five allegations" **[ The her Mr. Melidones refers to here is my co-worker Ms. Carmen Negron. She is an Afro-Latina of Dominican Republic heritage. The fact is Mr. Melidones was the one who made a derogatory remark about her to me when she first started working at the jobsite. Mr. Melidones described her to me as a "nappy hair, dirty rat." He instructed me to go over to her and tell her to comb her hair]**

7

**(16).** Before the 05/09/12 loading dock confrontation John Meldiones knew that all packages/mails I had delivered to worksite were mostly accepted by my co-workers in the mailroom (located five levels underground) and occasionally by EJME office receptionist Melissa on the 26flr.

**(17).** Before the 05/09/12 loading dock confrontation John Melidones knew that there was no video/CCTV footage of me accepting or waiving a BB gun in the worksite lobby.

**(18).** There is documentary evidence on the district court record that shows that the BB gun was delivered on 03/14/12 @11:57am and accepted by Sindia Maldanado (a T&M employee and mailroom supervisor). As with all other delivered packages, this package was given to me and taken home the same day. ***SEE***: APPX E

**(19).** On Tues. 05/15/12, during the disciplinary hearing and before my employment termination on Fri. 05/18/12, T&M senior managerial employees Mr. Steven Gutstein, Ms. Toni Scarito, Mr. John Aleles and Mr. Carl Capponi read the disciplinary form and heard the audio recording of the 05/09/12 loading dock confrontation. They all signed and backed dated the disciplinary form.

### B. THE SIX ALLEGATIONS THE DISTRICT COURT CREDITED ALONG WITH THE 05/09/12 CONFRONTATION IS ENOUGH TO PROOF THAT I WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT

**(20).** The district court in its 07/19/18 corrected decision gave credit to six of my less offensive allegations. Those six credited allegations were: *"Manny the homo"*, *"Mimicry of Daniel's manner of speech,"* *"Singing of calypso music,"* *"big words,"* *"2012 presidential election,"* and *"locker room"*. ***SEE***: 13 Civ. 4384 Dkt#185 pg. 35-37

**(21).** The six allegations the district court credited may not be sufficient to proof that I was subjected to a hostile work environment, but together with the 05/09/12 loading dock confrontation I believe they do. ***SEE***: 13 Civ. 4384 Dkt#185 pg. 35-37, ***SEE***: Trial Ex: PX4

9

**C.** THE WRITTEN ALLEGATIONS IN MY EEOC/NYSDHR COMPLAINT FORMS ALONG WITH THE 05/09/12 CONFRONTATION IS ENOUGH TO PROOF THAT I WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT OR AN ADVERSE EMPLOYMENT ACTION

**(22).** In my 09/05/12 Equal Employment Opportunity Commission complaint form, I wrote the following factual statements: **_SEE_**: 2nd Cir. case No. 22-1614 Dkt 21 pg. 98-99

- "In June 2011, Mr. Melidones came to me and asked me if I'm gay. He went on to tell me that his son is gay."

- "In April 2012, Mr. Melidones twice slapped me on my back and said, be a man, man up."

- "When I mentioned to him in a text of my intention to go to the company, he took retaliatory actions against me."

- "The company's executives (name attached) immediately dismissed and ignored my complaints by saying it's me being vindictive."

**(23).** In my 09/05/12 New York State Division of Human Rights complaint form, I wrote the following factual statements: **_SEE_**: 2nd Cir. case No. 22-1614 Dkt 21 pg. 107-113

- **National Origin** – "Mr. Melidones always spoke to me in an imitated English accent."

- **Race/Color** – "I was told that I'm not Black. Other employees complained about racial remarks made by Mr. Melidones."

- **Sex/Sexual Orientation** – "my supervisor asked me if I'm gay. Most recently on 05/08/12, he told me to be a man, I need to man up."

- **Retaliation** – "When I told the supervisor of my intention to go to the company, he vindictively served me with a disciplinary write-up."

10

- **Acts of Discrimination** – "The company ignored all complaints verbal and written about this supervisor."

- **Description of discrimination**

  – "A week on the job my supervisor John Melidones said to me that most property owners in the area prefer to hire White security personnels."

  – "In July 2012, Mr. Melidones came to me and asked me if I'm gay, When I did not answer he went on to tell me that his son is gay."

  – "In Sept. 2011, I verbally complainted to John via phone that I was being ignored and undermined because my subordinate thinks I'm gay. He said he'll talk to the staff, but he never did. In fact, he encouraged their attitude towards me."

  – "On May 8, 2012, Mr. Melidones slapped me on the back hard and said to me, be a man, man up."

- **How exactly did you complain about the discrimination?**

  – "On the said date above, the company had a hearing with myself and John Melidones. When I mentioned Mr. Melidones discriminatory conduct towards me, I was immediately shutdown/dismissed."

- **If you did not report the discrimination, please explain why:**

  – "I did not complain sooner because of the fear of losing my job and intimidated threats by Mr. Melidones."

11

- **Did the person you are complaining against touch you, hurt you or physically harm you?**

    – "While asking me if I was gay on July 2012, he stood intentionally closed to me"

    – "Mr. Melidones also came to the locker room witnessing me changed my clothes."

**(24).** In my 09/28/12 NYS Division of Human Rights rebuttal, I wrote following factual statements: **_SEE_**: 2nd Cir. case No. 22-1614 Dkt 21 pg. 115-117

- "In the first week, Mr. John Melidones approached me and said, most property owners in the area does like to hire Blacks. They prefer White security personnel. The only reason Blacks are hired is because there is no other choice. The fire safety dir. I replaced was White."

- On the computer at my work podium (rear lobby) I saw emails sent by co-worker Paul Sylvio to Bob Woods of T&M and Joe Greisch (Minskoff bldg. property manager) complaining about Mr. Melidones used of racial and ethnic slurs towards him."

- In June or July 2011, at around 2pm (I'd just come back from my lunch break) Mr. Melidones approached me at my work podium and he asked me if I was gay. Refusing to answer his question, Mr. Melidones switched from standing to my right to my left. He told me that his son AJ is gay. He gently rubbed his shoulder to mine and feeling uncomfortable, I eased away."

- "Mr. Melidones always spoke to me with an imitated English accent. I showed him my birth certificate in hope he would stop, but he never did."

- In May or April at around 7pm, Mr. Melidones called me at my work podium and told me he was at his daughter's school play of Mary Poppins. He said, "you will make a good Mary Poppin."

12

- "On 05/04/12 there was a situation involving Bain Capital employee being terminated. Mr. Greisch mentioned it to me briefly and said that Mr. Melidones will tell me what to do later that evening."

- "At around 4:50pm, Mr. Melidones called my work podium, yelling and cursing at me on the phone because I did not follow his instruction to go to the Bain's office on the 42nd flr and speak with Ms. Laisy (office manager) about this employee's termination. I instead called and spoke with her. His son AJ, building engineer Keith and Jeff Sussman were witnesses to this."

- "On 05/07/12, I called out because I was not feeling well. I sent Mr. Melidones a text, he responded by saying I'll have to work because he can't find anyone. I told him that I'll quit if force to work. Mr. Melidones worked my 4pm-12am shift that day."

- "On 05/08/12, when I came back to work I was told by Edgardo (co-worker), Frank (bldg.. porter), and Fred (bldg.. engineer) that Mr. Melidones was very angry at me. They said that Mr. Melidones was going around asking the staff if I was wanted on the shift/job. He said that I fucked him over and he was going to get me off that shift, changed stuff around."

- "At around 4:40pm, in the rear lobby while standing at my work podium, I verbally expressed to Joe Greisch my unhappiness working with Mr. Melidones and told him what occurred on Fri. 05/04/12. Mr. Greisch said that he'll take care of it."

- "The emails sent by Paul Sylvio mentioned earlier and all other emails were deleted from my work podium computer."

- My co-worker Roy Johnson (7am-3pm FLSD) who used to drive Mr. Melidones to and from work stopped all communications with me. He ignored all of my attempts to speak with him."

13

- "On 05/09/12, Mr. Melidones served me with the disciplinary write-up. He had guards I supervised witnessed him doing so. I believe this was done to humiliate me which it did."

- "In April 2012, Mr. Melidones came in the locker room and witnessed me changing into my uniform. He did this more than once."

## CONCLUSION

For all of the reasons stated above, I ask the court to grant this petition for rehearing and rehearing en banc.

14

## CERTIFICATE OF COMPLIANCE

I, Otis Daniel wrote this petition for rehearing or rehearing en banc. I certify that it contains 3, 056 words.

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Otis A. Daniel

**CERTIFICATE OF SERVICE***

Docket Number: 23-7557

v.

TGM Protection Resources, LLC

I, __Otis Daniel__, hereby certify under penalty of perjury that
      (print name)
on __7/8/2024__, I served a copy of __My Petition__
      (date)
__For Rehearing And Rehearing En Banc__
      (list all documents)

by (select all applicable)**

___ Personal Delivery      **X** United States Mail      ___ Federal Express or other Overnight Courier

___ Commercial Carrier      ___ E-Mail (on consent)

on the following parties:

| Mr. Leonard Weinrand | 1251 6th Ave | NY | NY | 10020 |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |

| | | | | |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |

| | | | | |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |

| | | | | |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

__7/8/2024__
Today's Date

__Otis A. Daniel__
Signature

Certificate of Service Form (Last Revised 12/2015)